MAYNARD C. TEALL *vs.* FRANK S. HARLOW.

MARGARET TEALL *vs.* SAME.

Middlesex.  April 8, 1931. — May 26, 1931.

Present: RUGG, C.J., CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*Landlord and Tenant,* Construction of lease, Common entrance, Theft of tenant's property. *Practice, Civil,* Exceptions.

A provision in a lease of an apartment in an apartment building requiring the landlord to furnish janitor service did not impose upon the landlord the duty of keeping locked the inner door of the front vestibule of the building, which was equipped with an automatic lock opened from the outside by a key and from the inside by any of the tenants by pressing a button, each apartment being connected with the front vestibule by a telephone arrangement.

In the circumstances, the tenant under the lease above described could not maintain an action of contract or tort against the landlord for the value of property stolen from the apartment, even if the evidence justified

findings that the janitor left the door open, or permitted it to remain open, during the whole of an afternoon and that the theft occurred during that afternoon: the defendant thereby violated no duty he owed to the plaintiff, since the mere relationship of landlord and tenant did not require the defendant to protect the plaintiff's property from thieves or to keep the door locked.

This court, having determined, upon exceptions by the plaintiff in an action after a verdict for the defendant, that the verdict was the conclusion which should have been reached as a matter of law on the evidence, did not consider exceptions to the exclusion of evidence and the refusal to give rulings which, if admitted and given, could not have affected that conclusion.

Two ACTIONS OF CONTRACT OR TORT. Writs dated September 15, 1921.

The actions were tried together in the Superior Court before *Pinanski*, J. Material evidence is stated in the opinion. There was a verdict for the defendant in each action. The plaintiffs alleged exceptions.

*H. W. Packer,* (*Frank J. Murray* with him,) for the plaintiffs.

*W. E. Bennett,* for the defendant.

SANDERSON, J. These actions in tort or contract were tried together. The declaration in the case of Maynard C. Teall alleges in the first count that the plaintiff executed a lease with the defendant of a suite, in Cambridge, for the term of one year from May 1, 1920; that the plaintiff and his family took possession of the premises and complied with all covenants and agreements of the lease; that on July 26, 1920, the defendant or his agents negligently left the front door of the apartment building open and hooked back for a long period of time; that the front door and hallways leading therefrom were under the control of the defendant for the benefit of the tenants and their families; that it was the duty of the defendant to keep the front door properly closed or guarded to prevent the entrance of thieves or unauthorized persons, and as a result of negligence in leaving the door open and hooked back persons unknown to the plaintiff entered the apartment building and his apartment and stole articles belonging to him. The second count alleged negligence in leaving the door open and hooked back and allowing it to remain in that position; and that it was the

duty of the defendant to keep that door closed or guarded to prevent the entrance of thieves or other unauthorized persons. The declaration in the case of Margaret Teall, wife of Maynard C. Teall, was in one count substantially like count 1 in the first case except for the allegation that the lease was executed by her husband. She seeks to recover the value of her property stolen. The lease provided that the lessor should furnish heat, continuous hot water and janitor service. It also provided "that all furniture, merchandise or property of any kind which may be on said premises shall be at the sole risk of the lessee, or if the whole or any part thereof shall be destroyed or damaged by fire, water, or otherwise, the lessor shall in no case be held liable to any party by reason thereof."

The entrance to the apartment building is gained by passing through the outside vestibule door, which is supposed to be kept unlocked, into a vestibule, thence through the inner vestibule door which is provided with a door check and an automatic lock so that it will lock when closed if the buttons on the lock are properly arranged. When locked it may be opened from the outside by means of a key, or it may be opened by any of the tenants from the inside by pressing an electric button. There are telephone arrangements from each suite connecting with the front vestibule. The appliance for keeping the door open was used by the tenants in taking furniture and other things in and out of the building, and was used by the janitor when cleaning the front hall and vestibule. There was evidence that on July 26, 1920, the suite hired by Maynard C. Teall was forcibly entered through the door of his apartment and property of each plaintiff stolen.

The plaintiff Maynard C. Teall testified, without objection, that after discovering the theft he told the janitor of the building that both vestibule doors were open and fastened back and the janitor said they had been that way all the afternoon and that someone had moved a piece of furniture in or out. The parties agreed that an occupant of the building would testify if called that when she left her apartment in the afternoon of the day of the theft the vesti-

bule door was open and hooked back and that when she returned later in the afternoon this door was still open; and that she remembers that the position of one of the window curtains in the Teall apartment was not the same when she returned as when she went away. There was no evidence to indicate whether the larceny occurred during the afternoon or earlier in the day, unless an inference could be drawn from this evidence as to the change in the position of the curtain. The evidence would justify a finding that the janitor knew after the crime that the vestibule doors had been open all of the afternoon, but the evidence did not disclose how he knew or when he first discovered this fact or whether he opened the door or consented to its being open.

There was no evidence that the thief entered through the door when it had been opened or permitted to be open by the janitor. So far as the evidence discloses, the perpetrator of the crime may have gained entrance by signalling to some apartment from the vestibule or he may have come from some other apartment. The defendant testified that it would be possible for a person to come into the vestibule and ring various bells and probably gain access without talking to any one. So far as appeared there had been no change in the equipment and uses made of the vestibule and doors after the plaintiffs went into occupation of the apartment. The janitor testified that the inner vestibule door was supposed to be kept locked, and that he made it a point to see that the door was closed so as to keep out people who did not belong there. Only one janitor had been employed in the building and his duties, as stated by himself and the defendant, were to look after heat and hot water, take charge of garbage and waste, keep front halls clean, and the court and sidewalks clear and clean, take care of the lawns, and answer bells from tenants making complaints. He also testified that if there was anything wrong with the hall or with the inner vestibule door he would repair it or get someone else to do so.

The plaintiffs' contention is that the jury could find that the provision in the lease for janitor service bound the

defendant to keep the inside vestibule door closed and locked and that the law imposed the same duty upon him. It is apparent from the control which each tenant had of the locking and unlocking of the door both by key and by pressing a button in the apartment, as well as the right each tenant had to open the door for purposes incident to occupying or moving furniture or other things into or out of the building, that the owner could not perform the duty which the plaintiffs say was owed to them without keeping a man on guard at the door throughout the day and night. The parties could not have intended that kind of an obligation to be included in the contract for janitor service. These words, as they are ordinarily used, would not require the owner to have the doors continuously guarded by a janitor. *Fagan* v. *Mayor, Aldermen & Commonalty of New York*, 84 N. Y. 348, 352. *Kramer* v. *Industrial Accident Commission*, 31 Cal. App. 673, 675. There was no express provision in the contract to require the owner to keep the inside vestibule door closed and locked, and we are of opinion that the contract for janitor service could not be found to impose upon the defendant such a duty in respect to the door. The mere relationship of landlord and tenant would impose upon the landlord no such duty. The control of common entrances, halls, stairways or other parts of a building retained by a landlord may impose upon him duties as to remedying defective or dangerous conditions therein. *Watkins* v. *Goodall*, 138 Mass. 533. *Faxon* v. *Butler*, 206 Mass. 500. *Crudo* v. *Milton*, 233 Mass. 229. *Kendall* v. *Tashjian*, 258 Mass. 377, 378, 379. But so far as appears there was nothing defective or dangerous about the condition of the vestibule doors, and in the matter of locking and unlocking or opening and closing the doors the control was shared by the landlord and the tenants. The mere relationship imposed upon the defendant no duty to protect the plaintiffs' property from thieves or to keep the vestibule door locked. See *Bell* v. *Siegel*, 242 Mass. 380, 382. *Caruso* v. *Lebowich*, 251 Mass. 477, 478. We are of opinion that the evidence viewed in the light most favorable to the plaintiffs would

not justify a finding that any duty owed by the defendant to either of them had been violated, even if it be assumed that the vestibule door was opened and fastened back by the janitor or permitted by him to remain open on the afternoon of July 26, 1920. For this reason the jury in finding for the defendant reached the conclusion which, as matter of law, should have been reached; and inasmuch as the excluded evidence, if admitted, and the rulings refused, if given, could not affect the result reached in the cases, the plaintiffs' exceptions relating to those matters need not be further considered.

*Exceptions overruled.*