Alice Jae Hee CHOY, Plaintiff,

v.

**FIRST COLUMBIA MANAGEMENT, INC., and 808 Memorial Drive Association, Defendants.**

Civ. A. No. 86–1752–C.

United States District Court, D. Massachusetts.

Dec. 28, 1987.

John F. Donovan, Jr., Robert H. Quinn, Quinn & Morris, Boston, Mass., for plaintiff.

Martin J. Rooney, Curley & Curley, Boston, Mass., Robert A. Curley, Jr., for defendants.

## MEMORANDUM

CAFFREY, Senior District Judge.

This action is before the Court on the defendants' motion for summary judgment. Jurisdiction is based on diversity. The plaintiff is a former tenant of the defendant, 808 Memorial Drive Associates, a limited partnership. The leased premises consisted of a unit in an apartment building located at 808 Memorial Drive in Cam-

bridge, Massachusetts. Defendant First Columbia Management, Inc. was the manager of the apartment building. The complaint asserts claims for negligence and breach of contract arising from a criminal attack on the plaintiff occurring in her apartment.

At around 2:00 a.m. on October 26, 1985, the plaintiff, who had just returned home, heard a knock on her apartment door. Plaintiff went to the door and asked who was there. A man identified himself as a maintenance man who needed to get into plaintiff's apartment in order to fix a plumbing problem that was disturbing the tenants below. The plaintiff asked him why he could not wait until the morning to make the repairs but the man insisted that the problem had to be fixed right away. Plaintiff knew that a maintenance man would sometimes have to enter her apartment in order to repair plumbing breakdowns affecting adjacent apartments and the man at the door seemed knowledgeable about past plumbing problems within the building. Plaintiff unlocked her door to let him in. She did not ask him to show any identification nor did she call the building manager to verify the man's story. Once the door was unlocked, the man pushed his way in and brutally beat and raped the plaintiff. The attacker has never been apprehended.

Plaintiff has brought this action claiming that the defendants negligently failed to provide adequate security precautions and that this failure also amounted to a breach of defendants' contract with the plaintiff. Specifically, plaintiff alleges that the premises lacked twenty-four hour security guards and that locks on the doors to the building were constantly broken or unlocked providing easy access to the intruders.[1]

To hold a defendant liable for negligence a plaintiff must prove that the defendant breached a duty of care owed to the plaintiff and that this breach caused the plaintiff harm. Therefore, the initial issue presented is whether the defendants had a duty to take any measures at all to protect the plaintiff from the criminal attack. As a general rule, the law does not recognize a duty to protect another from the criminal acts of a third party. *See* Restatement (Second) of Torts § 314 (1965). This rule has historically been applied in the landlord-tenant context. *See, e.g., Teall v. Harlow,* 275 Mass. 448, 176 N.E. 533 (1931); *Martin v. Usher,* 55 Ill.App.3d 409, 13 Ill. Dec. 374, 371 N.E.2d 69 (1977).

Over the years, courts have moved away from the traditional rule against liability. The modern trend allows recovery when a landlord's failure to provide or maintain adequate security results in injury to the plaintiff through criminal attack by another. *See Kline v. 1500 Massachusetts Avenue Corp.,* 439 F.2d 477, 482 (D.C.Cir. 1970); *Trentacost v. Brussel,* 82 N.J. 214, 412 A.2d 436, 445 (1980); *Paterson v. Deeb,* 472 So.2d 1210, 1220 (Fla.Dist.Ct.App.1985). The primary justification for imposing such a duty is the superior ability of the landlord to provide reasonable precautions against crime. *See Kline v. 1500 Massachusetts Avenue Corp.,* 439 F.2d at 484. As between the landlord and tenant, the landlord is better equipped to take the necessary precautions to prevent harm because of the control he exercises over the common areas of the premises.

The parties have cited no cases that indicate that Massachusetts has expressly abrogated the common law rule in the landlord-tenant context. However, at least one case exists where a cause of action in negligence for a landlord's failure to provide adequate security was implicitly recognized by the Massachusetts Court of Appeals. *See Brown v. LeClair,* 20 Mass.App. 976, 482 N.E.2d 870 (1985). *Cf. Mullins v. Pine Manor College,* 389 Mass. 47, 449 N.E.2d 331 (1983) (college has a duty to provide adequate protection to its resident students against the criminal acts of third parties). I need not decide, however, whether the defendants owed such a duty to the plain-

---

1. Plaintiff also apparently intended to base her claims on unsafe conditions existing in a garage serving the premises; however, uncontroverted evidence shows that the intruder could not have entered the building through the garage.

tiff. For even if a landlord has a duty to protect a tenant from the criminal attacks of third parties, the plaintiff has produced no evidence from which a jury could rationally decide that the defendants' negligence caused the plaintiff's injuries. Sumary judgment is therefore appropriate.

■ In analyzing the evidence produced for summary judgment, a review of the applicable standards is helpful. A party moving for summary judgment has the burden of proving that no genuine issue of material fact exists and that he is entitled to summary judgment as a matter of law. However, a defendant who moves for summary judgment need not produce evidence which negates the allegations of the plaintiff's complaint. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 265 (1986). Summary judgment is appropriate when, after adequate time for discovery, a party having the burden of proof at trial fails to make a showing sufficient to establish an essential element of his case and on which he will have the burden of proof at trial. In such a situation, all other facts, whether disputed or not, become immaterial because of the failure of proof on an essential element of plaintiff's case. *Id.* "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ Causation is an essential element of the plaintiff's case in an action for negligence. Proof that the defendant breached a duty owed to plaintiff is not enough to establish liability. To recover for her injuries, the plaintiff must prove a causal connection between the defendant's negligence and plaintiff's harm. *Cannon v. Sears Roebuck & Co.,* 374 Mass. 739, 374 N.E.2d 582 (1978). The plaintiff is not required to exclude every possibility that her injuries may have resulted from causes other than the defendant's negligence but she must introduce evidence which makes it more probable than not that her injuries were due to the negligence of the defendant rather than some other cause. *Mucha v. Northeastern Crushed Stone, Co.,* 307 Mass. 592, 596, 30 N.E.2d 870 (1941).

■ In the present case, the plaintiff has failed to produce evidence sufficient to establish causation, an essential element of her case. Plaintiff has maintained that the failure to provide twenty-four hour security guards constituted a lack of reasonable care on the part of the defendants in meeting their security obligations to the plaintiff. In addition, although plaintiff does not refer to the allegation in her brief, plaintiff's answers to the defendants' interrogatories state that she also bases her claim for negligence on the fact that the locks on the doors to the apartment complex were constantly broken or unlocked, a condition which the defendants failed to correct despite receiving complaints from the plaintiff and other tenants. Even assuming that the plaintiff's assertions are true, however, the plaintiff has not seriously controverted the fact that no one knows how the assailant entered the apartment complex on the night of the attack. Without evidence as to how the attacker entered the building, it would be pure speculation to state that greater care on the part of the defendants in providing security would have prevented the attack.

Without evidence as to how the assailant entered the building or at least tending to exclude the possibility that he entered lawfully, it would be purely conjectural to believe that a security guard on the premises would have prevented the entry of the assailant. The assailant may have entered the building in the company of another tenant in which case a security guard would not have had authority to stop his entry. Alternatively, the assailant may have been "buzzed in" by a tenant who did not first identify him. Even assuming that the attacker was on the premises unlawfully, there is no evidence to prove that a security guard would have prevented him from reaching the plaintiff's door in the first place. As the deposition of plaintiff's own security expert indicates, it is highly improbable that the presence of security

guards would eliminate all crime on the premises.

■ Even if plaintiff had provided some evidence that the presence of security guards would have prevented the attacker from ever reaching her door, plaintiff still has the burden of proving that the failure to provide security guards was unreasonable under the circumstances. Plaintiff has presented no evidence to show that the neighborhood or the building itself had a high incidence of crime prior to the attack on plaintiff.[2] Absent such evidence, I find as a matter of law that no jury could rationally find that the defendants' failure to provide twenty-four hour security guards was unreasonable under the circumstances. Plaintiff has provided no evidence that twenty-four hour security guards are a common security measure in apartment buildings. Indeed, plaintiff's own expert suggests that only luxury-type apartment buildings typically provide this service.

With respect to plaintiff's assertion in her answers to interrogatories that the doors to the building were constantly unlocked or that the locks were constantly broken, I find that the causal connection between the asserted negligence and the plaintiff's injury is too attenuated to allow a jury to find that more probably than not the assailant gained access to the complex in this manner. The plaintiff sets forth no specific facts as to which doors were unlocked or broken, when and for how long they remained in this condition and specifically how often this disrepair occurred. Consequently, her assertion merely resembles another allegation in the pleading. Because of this lack of specificity, only the weakest inference is raised that since locks had been broken or unlocked on other occasions it is more likely than not they were broken or unlocked on the night of the attack.[3] In addition, even if plaintiff's evidence were sufficient to establish that the doors were unlocked that evening, as noted above, there is no evidence tending to exclude the possibility that the assailant entered the premises lawfully. In the absence of such evidence, I find that the defendants are properly entitled to summary judgment because the plaintiff has failed to make a showing sufficient to support a causal connection between any alleged breach of duty by the defendants and her injuries.[4]

■ Defendants have also moved for summary judgment on the plaintiff's breach of contract claims. The substance of these claims is that the defendants breached the implied warranty of habitability, the implied covenant of quiet enjoyment and the Occupancy Agreement by failing to provide adequate security to protect the plaintiff.

Plaintiff has pointed to no relevant facts, law or arguments that support her claims that defendant breached the implied warranty of habitability and the covenant of quiet enjoyment. Her brief does not address these claims at all. In addition, although plaintiff has provided evidence that her mother was told by defendants' representatives that security guards would be available twenty-four hours a day, she has presented no legal theory to explain how this representation to plaintiff's mother became a term in a contract between plaintiff and defendants. The Occupancy Agreement contains no provision which would require twenty-four hour security guards. Because of the absence of any explanation from plaintiff as to why she believes such a

---

**2.** The affidavit of plaintiff's investigator stating that the Cambridge police told him they considered the neighborhood a high crime area is insufficient to establish that fact since it is obvious that it is not based on the affiant's personal knowledge.

**3.** Plaintiff's deposition indicates that at least one of the two doors leading to the apartment building was properly secured because she had to use her key to enter the building that night.

**4.** This is not a case where a jury would be entitled to discount the possibility that the defendant was on the premises lawfully. *See Mullins v. Pine Manor College*, 389 Mass. at 59, 449 N.E.2d 331. In *Mullins*, the defendant college had in its possession records listing all lawful visitors to the premises. Failure to produce the records at trial raised an inference that more probably than not the attacker had not been a visitor lawfully on the premises. No such circumstances are presented here.

requirement was implied into her contract with defendants, the defendants are entitled to summary judgment on these claims.

Order accordingly.