Toomey, J.
The plaintiffs, Albert Monroe Toney, III (“Toney”), Robert Domiano, as Administrator of the Estate of Robert Domiano, Jr. (“Domiano") and Albert Monroe Toney, III, as father and next friend of Kayla Marie Toney, brought this action against the defendants, Babcock-Colton Associates, a Massachusetts Limited Partnership (“Babcock-Colton") and Zaxynoffs, Inc. T-A Ding Ho Restaurant I & II (the “Ding Ho”), alleging, inter alia, negligence and wrongful death arising out of a shooting which took place on Southbridge Street outside the Ding Ho on September 29, 1991. Babcock-Colton and Ding Ho each now move, pursuant to Mass.R.Civ.P. 56, for summary judgment. After hearing and the Court’s consideration of the submissions of the parties, the defendants’ respective motions for summary judgment are DENIED.
BACKGROUND
It is undisputed that, at approximately 12:01 A.M. on September 29, 1991, Toney and Robert Domiano, Jr. (“Domiano, Jr.”), were patrons at the Ding Ho Restaurant, which is located at 38 Southbridge Street, Worcester, Massachusetts. It is further undisputed that (1) The Ding Ho Restaurant is owned and operated by the defendant, Zaiynoffs, Inc. T-A Ding Ho Restaurant I & II, and (2) the building where the Ding Ho Restaurant is located is owned by Babcock-Colton.
On September 29, 1991, Toney and Domiano, Jr. went to the Ding Ho Restaurant for a late dinner with two other friends. As the four were finishing their meal, a disturbance occurred between the owner of the Ding Ho, John Ng (“Ng”), and a group of three men who sought to order food. One of the men, later identified as Curtis Johnson (“Johnson”), spit in Ng’s face. Toney then approached the men, identified himself as a Worcester Police Officer, showed his badge, and told Johnson and his companions to leave the premises. After a verbal confrontation between Johnson and Toney, Johnson and his friends left the Ding Ho. They had been served neither food nor beverages.
A few minutes later, after finishing their meal, Toney, Domiano, Jr. and their friends left the Ding Ho. Upon leaving the Ding Ho, Toney, Domiano, Jr. and their friends noticed Johnson and his companions standing near a signpost on the sidewalk, six to ten feet from the Ding Ho. Prior to going outside, Toney could not see Johnson or his companions. Johnson and his companions began shouting obscenities at Toney and his friends. Making a conscious decision to ignore Johnson and his companions, Toney and his friends began walking down the sidewalk away from the Ding Ho. After they had walked about fifty feet down the sidewalk, Toney, having heard footsteps behind his group, turned and saw Johnson brandishing a gun three to five feet away.
Johnson shot Toney through the shoulder, causing him to fall to the ground. One of Toney’s friends, John Ellison (“Ellison”), attempted to disarm Johnson and also was shot. As Johnson turned to shoot Toney again, Domiano, Jr. stepped between the two men and was fatally wounded. Johnson then escaped, but was later apprehended by police. In July, 1992, Johnson was tried, convicted of first degree murder and sentenced to life in prison.
At the time of the shooting, Babcock-Colton was a commercial landlord and the owner of the building at 38 Southbridge Street in which the Ding Ho was located. It is undisputed that no written lease exists between the Ding Ho and Babcock-Colton. It is further undisputed that the building at 38 Southbridge Street has a common lobby which serves other tenants, but from which there is no access to the Ding Ho. The Ding *722 Ho has a separate entrance facing the street in front of the building, and a second separate entrance in the rear of the building. In addition, the Ding Ho has a private basement to which no other tenants of the building have access. Babcock-Colton asserts that it is not responsible for trash or snow removal at the Ding Ho and further asserts that it has assumed no responsibility for security of any kind with respect to the Ding Ho. The manager of the Ding Ho, John Ng, responds, however, that Babcock-Colton was responsible for trash and snow removal and security at the 38 Southbridge Street location of the Ding Ho.
Babcock-Colton now moves for summary judgment on the ground that there is no genuine issue of material fact as to its duty toward the plaintiffs who were shot on the sidewalk outside its building at 38 Southbridge Street. The Ding Ho moves for summary judgment on the same ground. Both motions are opposed by the plaintiffs.
DISCUSSION
This court should grant summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Nashua Corp. v. First State Ins. Co., 420 Mass. 196, 202 (1995); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56. The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving pariy cannot defeat the motion for summary judgment by resting on its “pleadings and mere assertions of disputed facts ...” LaLonde v. Eissner, 405 Mass. 207, 209 (1989) (citing Community Nat’l Bank v. Dawes, 369 Mass. 550, 554 (1976)).
Babcock-Colton’s Motion for Summary Judgment
Although it acknowledges that, in Massachusetts, a landowner has a general duty to provide reasonable security to all lawful visitors, Mounsey v. Elland, 363 Mass. 693 (1973), Babcock-Colton asserts that, because the shooting occurred on a sidewalk fifty feet from its property, it had no duty to provide reasonable security on such public property. The plaintiffs maintain, however, that the shooting outside on the sidewalk was the culmination of an incident which began inside the Ding Ho, in a building owned and controlled by the defendants, and which, therefore, triggered a continuing duty on the part of Babcock-Colton.
Babcock-Colton, in advancing its view that plaintiffs will not be able to demonstrate, at trial, negligence, suggests that, “[t]here is no actionable negligence absent a showing of duty owed by defendant to plaintiff.” O'Sullivan v. Hemisphere Broadcasting Corp., 402 Mass. 76, 78 (1988). The landlord also notes that “[i]t is idle to talk of negligence unless one keeps in mind also the nature of the duty, if any, which the party accused of negligence owes to the party claiming to have been injured.” Theriault v. Pierce, 307 Mass. 532, 533 (1940). Thus, the fulcrum question before this court is whether Babcock-Colton owed a duty to the plaintiffs to protect them from actions taken by Johnson on the sidewalk outside 38 Southbridge Street.
The Supreme Judicial Court has held that a landowner has a general duty to act reasonably to protect lawful visitors from foreseeable danger. See generally Flood v. Southland Corp., 416 Mass. 62, 71-73 (1993) (landlord had a duty reasonably to protect customer where stabbing in convenience store parking lot was, under all the circumstances, foreseeable); Whittaker v. Saraceno, 418 Mass. 196 (1994) (landlord has no duty where criminal act [rape of plaintiff in office] was not foreseeable). “. . . [T]he standard of foreseeability turns on an examination of all the circumstances.” Mullins v. Pine Manor College, 389 Mass. 47, 56 (1983). The defendant landlord contends that no duty devolved on it where there was no reasonable foreseeability that one customer would shoot another. Flood, 416 Mass. at 72-73. But, under all the circumstances at bar, whether Johnson’s act was reasonably foreseeable to Babcock-Colton is a genuine issue of material fact and, accordingly, duty remains a contested matter to be resolved at trial.
Babcock-Colton argues further that, in a commercial landlord-tenant relationship, as here, “[a] landlord has a common law duty to keep the premises in safe condition, with attendant liability if he does not, only if (1) he has undertaken so to do under the terms of the lease or (2) the location of the defect that caused injury was in a common or other area appurtenant to the leased premises ‘over which the [landlord] had some control.’ ” Chausse v. Cox, 405 Mass. 264, 266 (1989) (emphasis added). Specifically, Babcock-Colton maintains that, because it retained no control over the premises leased by the Ding Ho and because there is no written lease, it has no obligation, absent some contractual agreement to the contrary, to keep the leased premises safe. The plaintiffs contend, on the other hand, that, because there is neither evidence of a written lease or tenancy agreement nor any evidence that the parties discussed specific issues such as control or security, there is a genuine issue of material fact as to whether Babcock-Colton or the Ding Ho or both were responsible for the plaintiffs injuries.
*723 It is well settled that
[cjontrol over the area where the injury occurred is the analytical tool for determining whether landlord or tenant is liable for the hurt, but the more fundamental question is: does the defendant owe a duty of care to the plaintiff who is claiming injury and damages? That duty may fall on both the landlord and tenant in cases where the landlord and tenant are aware of the unsafe condition and in a position to do something about it.
Sheehan v. El Johnan, Inc., 38 Mass.App.Ct. 975, 976 (1995) (citing Hopkins v. F.W. Woolworth Co., 11 Mass.App.Ct. 703, 705 (1981)). There being no written lease between Babcock-Colton and John Ng, owner of the Ding Ho, governing the rental of the Ding Ho premises, the question of the landlord’s obligation to control and secure cannot, therefore be determined by reference to a contract between the parties. That vacuum and the assertions proffered in the summary judgment materials suggest strongly that there is a genuine issue of material fact as to whether Babcock-Colton or the Ding Ho or both exercised control over the premises at 38 Southbridge on September 29, 1991.
The plaintiffs claim that the pattern of criminal activity in the area of the Ding Ho creates a genuine issue of material fact as to whether Babcock-Colton was obligated to provide additional security measures around the building. They advance the proposition that ”[t]he modern trend allows recovery when a landlord’s failure to provide or maintain adequate security results in injury to the plaintiff through criminal attack by another. The primary justification for imposing such a duty is the superior ability of the landlord to provide reasonable precautions against crime." Choy v. First Columbia Management, Inc., 676 F.Supp. 28, 29 (D.Mass. 1987) (citations omitted). Based on the record before me, which contains some evidence that Babcock-Colton knew or should have known of the risk of crime in the area, I find that there is a genuine issue of material fact as to whether Babcock-Colton had a duty to provide reasonable security in and around that premises. In sum, there remain genuine issues of material fact with respect to the foreseeability by the landlord of the shooting, the landlord’s responsibility for securing the locus of the assault, and the landlord’s foreknowledge of the character of the environs. Accordingly, Babcock-Colton’s motion for summary judgment is DENIED.
Ding Ho’s Motion for Summary Judgment
Similarly, the Ding Ho asserts that, while a possessor or landlord has a general duty to provide reasonable security to patrons, the Ding Ho has no duty to protect the plaintiffs on the sidewalk outside the restaurant. The plaintiffs riposte, however, that, because the initial contact between Johnson and Toney occurred inside the Ding Ho, the Ding Ho had a continuing duty to provide adequate security to plaintiffs as they left the restaurant. In addition, the plaintiffs maintain that, because there was a significant record of criminal activity in and around the restaurant’s premises, the Ding Ho had a duty to provide adequate security to its patrons as they passed within a reasonable reach of the restaurant.
Massachusetts law is clear that, “[t]he defendant, as the operator of a restaurant and bar, was in possession of real estate open to the public for business purposes. It owed a duty to a paying patron to use reasonable care to prevent injury to him by third persons whether their acts were accidental, negligent or intentional.” Carey v. New Yorker of Worcester, Inc., 355 Mass. 450, 452 (1969). I find, therefore, that there is a genuine issue of material fact as to whether the Ding Ho owed a duty to the plaintiffs, who were paying patrons, to protect or warn them of a possible continuing danger as they left the restaurant. The Ding Ho’s motion for summary judgment is, accordingly, DENIED.
ORDER
For the foregoing reasons, the defendants’ respective motions for summary judgment are DENIED.